UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN E. SCHMIEGE,

          Plaintiff,

    v.

THE STATE OF NEW YORK, *et al.*,

          Defendants.

_____

                    21-CV-418-LJV
                    DECISION & ORDER

On March 22, 2021, the *pro se* plaintiff, Brian E. Schmiege, commenced this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 (the "ADA"). Docket Item 1. Schmiege, who is currently an inmate at the Five Points Correctional Facility ("Five Points"), asserts claims arising from his time at the Attica Correctional Facility ("Attica")—where he resided when he filed the complaint—against New York State and various Attica employees. *Id.*

In a screening order issued on July 9, 2021, this Court allowed to proceed to service Schmiege's ADA claims against defendants Sean White, David Williams, and Joey Clinton; his conditions-of-confinement claims against White, Rodney Burns, Troy Emke, Andrew Snyder, and Elisabeth Couch; and his retaliation claim against Couch. Docket Item 7 at 18. But it dismissed Schmiege's section 1983 claims for damages against the defendants in their official capacities and informed Schmiege that if he did not amend his complaint within 60 days of that order, his claims against New York State and the Commissioner of the New York State Department of Corrections and

Community Supervision ("DOCCS"), as well as his inadequate-medical-care claims against White, Williams, and Clinton, would also be dismissed. *Id.* at 18-19.

Schmiege declined to amend his complaint,[1] Docket Item 8 at 1, and on November 10, 2021, the remaining defendants moved to dismiss the remaining claims, Docket Item 15-1. Schmiege responded on January 25, 2022, Docket Item 23, and on April 11, 2022, he moved for injunctive relief, release from custody, and summary judgment on his claims, Docket Item 25. Finally, on June 29, 2022, Schmiege moved for a default judgment. Docket Item 29.

For the following reasons, the defendants' motion to dismiss Schmiege's ADA and retaliation claims will be granted unless Schmiege amends his complaint to correct the deficiencies noted below. The defendants' motion to dismiss Schmiege's conditions-of-confinement claim is denied, and the Court construes Schmiege's complaint as bringing additional Eighth Amendment claims, which may also proceed. But Schmiege's motions for injunctive relief, release from custody, summary judgment, and a default judgment are denied.

---

[1] The Clerk's office mistakenly construed and filed Docket Item 26, a form document labeled "Complaint and Request for Injunction," as an amended complaint. *See* Docket Item 26 (04/29/2022 entry for "AMENDED COMPLAINT [sic]"). That document refers only to events that occurred after Schmiege apparently had been sent to another facility and was "[t]ransfer[red] back [to Attica] on 3/24/2022" and lists only White, Burns, Snyder, and Williams as "defendants." *Id.* at 1-2, 4. After the Clerk's office filed this document, Emke, Clinton, and Couch were terminated as defendants.

Schmiege clearly intended this document to be a motion for injunctive relief—not an amended complaint—and this Court construes it as such. The Clerk of the Court shall reinstate Emke, Clinton, and Couch as defendants in this action.

## FACTUAL BACKGROUND[2]

Schmiege is at least six-feet-six-inches tall and suffers from "sev[ere] nerve damage to [his] neck, back, right arm[, and] right hand," as documented in his medical records and confirmed by electromyography ("EMG") testing on March 5, 2021.  Docket Item 1 at 5, 35.  Due to his height, Schmiege requires a "long bed [f]rame [and] [h]ospital[-]style mattress" so that his head and feet do not hang off his bed, which exacerbates his nerve damage.  *Id.* at 5, 38.  Schmiege received these accommodations at "all of [his] prior prisons," including the Auburn Correctional Facility ("Auburn") and the Sing Sing Correctional Facility ("Sing Sing").  *Id.* at 5, 37-38.  In fact, a doctor at Sing Sing evaluated Schmiege and confirmed that Schmiege needed an extra-long bed to accommodate his size.  *Id.* at 38.

When Schmiege was first transferred to Attica in 2020, he requested the same accommodations, but "Deputy Security Mr. White[,] Medical Doctor David Williams[, and] Deputy of Programs Mr. Clinton" denied his requests.  *Id.* at 5, 25-29.  Schmiege filed a grievance challenging their decision, but his grievance was denied with a report noting that "medical review [did] not support [Schmiege's] requested accommodations"

---

[2] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The court also may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Schmiege has attached several documents to his complaint, including grievance documents and other correspondence with DOCCS, *see* Docket Item 1 at 9-41, and this Court therefore considers those documents.

and that "there [was] no evidence to suggest a long bed and extra pillow [were] medically necessary." *Id.* at 28.[3]

Even worse, on January 23, 2021, White, along with "'Lt.' Mr. Burns[,] 'Sgt.' Mr. Emke[,] 'Sgt.' Mr. Snyder[, and] Mental Health Ther[a]pist Ms. Couch . . . put [Schmiege] in a SHU[4] cell . . . [that] was cover[e]d in bodily [f]luids [and] cock roaches [sic] [and] was [f]reezing cold with absolutely no heat at all." *Id.* at 5-6.  As a result, Schmiege "bec[a]me deathly sick [and] suffer[ed] from mental [a]nguish." *Id.* at 6.  Schmiege and his fellow inmates brought these conditions to the attention of the Attica staff, including Couch.  *Id.* at 6-7.  In fact, all the defendants acknowledged the "dirty, disgus[]ting, unlivable[,] [and] [i]nhumane conditions of every cell on the SHU . . . [and] the very cold air." *Id.* at 7.  Schmiege ultimately reported Couch to the Central New York Psychiatric Center (the "CNYPC") for "misconduct [and] abuse of power." *Id.*

At some point, Couch "wrote a fabr[i]cated Tier [III] Ticket [against Schmiege] full of lies that were proven to be lies" by audio and video surveillance footage. *Id.* Moreover, since he reported the prison misconduct, Schmiege has been "targeted, retaliated against, [and] [] subject[ed] to victimizing acts of dehumanizing comments" and rumors "by security staff" that Schmiege is a "'[r]at snitch.'"  *Id.*

---

[3] Schmiege alleges that he faced other issues involving his medical care at Attica, but this Court dismissed the claims arising from those incidents at the screening stage. *See* Docket Item 7 at 13-15.

[4] The SHU—short for "special housing unit"—houses inmates "for disciplinary or protective purposes." *See Malik v. Miller*, 679 F. Supp. 268, 269 (W.D.N.Y. 1988).

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    MOTION TO DISMISS

In its prior order, this Court determined that Schmiege's ADA claim, his conditions-of-confinement claim, and his retaliation claim could proceed to service. Docket Item 7 at 17-19.  The defendants have moved to dismiss each of these claims. Docket Item 15.[5]  For the reasons stated below, Schmiege's conditions-of-confinement claim may proceed, but his ADA and retaliation claims cannot proceed as currently pleaded.  Additionally, this Court construes Schmiege's complaint as bringing an Eighth

---

[5] Notably, "a court's decision allowing some claims to go forward at the initial screening stage does not insulate those claims from later review on a motion to dismiss."  *Hendrix v. Pactiv LLC*, 488 F. Supp. 3d 43, 50-51 (W.D.N.Y. 2020) (collecting cases); *see Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (explaining that dismissal under Federal Rule of Civil Procedure 12(b)(6) may still be appropriate notwithstanding a court's earlier finding that the complaint was not "frivolous" for purposes of screening the complaint).  So this Court's prior screening order does not preclude review of the defendants' motion to dismiss.

Amendment claim against White, Williams, and Clinton regarding Schmiege's need for an extra-long bed.  That claim may proceed as well.

### A.    ADA Claim

Schmiege argues that White, Williams, and Clinton have violated the ADA by refusing to provide him the reasonable accommodation of an extra-long mattress and bed frame.  *See* Docket Item 1 at 5.  The defendants assert that this claim must be dismissed for two reasons.  First, they argue that Title II of the ADA does not permit "claims for money damages against [state officials] in their official capacity" because such claims are barred by sovereign immunity.  Docket Item 15-1 at 7-10.  And even if Title II allows damages claims against state officials, the defendants argue, Schmiege's ADA claim must be dismissed because he has not stated a plausible claim.  *Id.* at 10-16.

In this Circuit, the circumstances under which a Title II claimant can seek money damages against state officials are unsettled, to say the least.[6]  But this Court need not

---

[6] The Eleventh Amendment generally prevents private citizens from suing the states in federal court, but Congress may abrogate sovereign immunity "pursuant to a valid grant of constitutional authority."  *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107-08 (2d Cir. 2001) (citations omitted).  In *Garcia*, the Second Circuit addressed whether Title II "comport[s] with Congress's [authority under the Fourteenth Amendment] to the extent that the title allows private damage suits against states for violations."  *Id.* at 110.  It concluded that a plaintiff bringing a Title II claim and seeking money damages from state officials must "establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability."  *Id.* at 111.

But subsequent Supreme Court precedent has called *Garcia* into question.  *See, e.g.*, *Dean v. Univ. at Buffalo Sch. of Med. and Biomedical Sci.*, 804 F.3d 178, 193-95 (2d Cir. 2015); *Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n*, 374 F. Supp. 3d 276, 296-97 (W.D.N.Y. 2019).  In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Court stated that "insofar as Title II creates a private cause of action for damages against the [s]tates for conduct that actually violates the Fourteenth Amendment, Title II

weigh in on this issue because even if Schmiege could overcome sovereign immunity, he has not stated a plausible ADA claim.  *See Cole v. Goord*, 2009 WL 2601369, at *7 (S.D.N.Y. Aug. 25, 2009) (declining to "delve into the[] deep constitutional waters" surrounding Title II and sovereign immunity because the plaintiff's claims "fail to make out a violation of Title II in the first place").

"Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting 42 U.S.C. § 12132).  To state a claim under the ADA, a plaintiff must allege "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from

---

validly abrogates state sovereign immunity" (emphasis omitted).  It remanded the case and set out a test for the lower court to determine, "on a claim-by-claim basis, (1) which aspects of the [s]tate's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Id.*  "Thus, *Georgia* explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment."  *Dean*, 804 F.3d at 194.

Since *Georgia*, courts in this Circuit have taken different approaches when faced with the question of whether Congress has validly abrogated sovereign immunity under Title II.  *Id.* at 194-95.  Some continue to apply *Garcia, see, e.g.*, *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186-87 (E.D.N.Y. 2015) ("[I]t is well settled that monetary damages are only available under Title II of the ADA where the [p]laintiff is able to demonstrate intentional discrimination." (citations omitted)), while others adopt the approach laid out in *Georgia* to analyze whether Congress has validly abrogated sovereign immunity as to the conduct at issue, *see, e.g.*, *Goonewardena v. New York*, 475 F. Supp. 2d 310, 323-24 (S.D.N.Y. 2007) (applying *Georgia* and concluding that "the defendants' assertion of sovereign immunity does not bar [the plaintiff's Title II] claim").

participation in a public entity's services, programs[,] or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."  *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003) (citing 42 U.S.C. § 12132); *see Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

> A "qualified individual" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131(2).  "Disability" means "physical or mental impairment that substantially limits one or more major life activities," *id.* § 12102(1)(A), such as—but not limited to—"caring for oneself, performing manual tasks, . . . eating, sleeping, walking, . . . [or] working," *id.* § 12102(2).  An impairment is not a disability unless it substantially limits a major life activity.  29 C.F.R. § 1630.2(j)(1)(ii); *see Capobianco v. City of New York*, 422 F.3d 47, 56-57 (2d Cir. 2005).

"[A] person's height is not ordinarily an 'impairment' covered as a disability" under the ADA.  *Gowins v. Greiner*, 2002 WL 1770772, at *10 (S.D.N.Y. July 31, 2002); *see Sutton v. United Airlines*, 527 U.S. 471, 490 (1999) ("[A]n employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others.").[7]

---

[7] Height outside the "normal" range that is "the result of a physiological disorder" may be a disability.  *See Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir. 1997) (citing EEOC interpretive guidance to the ADA).  Schmiege has alleged that he is "[t]aller than regular inmates," Docket Item 1 at 38, but not that his height results from any physiological disorder.

And generally, allegations of pain are insufficient to support a claim that an individual is disabled under the ADA.  *See, e.g.*, *Sneed v. City of N.Y. Dep't of Parks and Recreation*, 2011 WL 4542960, at *3 (S.D.N.Y. Sept. 30, 2011) (noting that allegations of "Knee Pain/Neck Pain/Lung Problems" were insufficient to make the plaintiff a qualified individual with a disability); *Smith v. Walgreens Boots Alliance, Inc.*, 2021 WL 391308, at *5 (N.D. Cal. Feb. 3, 2021) (collecting cases demonstrating that "[t]he law is clear: chronic pain, alone, is not enough to create a disability").

To plausibly state a claim that he is a qualified individual with a disability, a plaintiff must specifically allege how his impairment affects his ability to perform a major life activity.  *Compare Lapinsky v. Amtrak Commuter Servs. Corp.*, 2001 WL 210288, at *4 (E.D. Pa. Feb. 28, 2001) (finding that, at the summary judgment stage, a plaintiff bringing an ADA claim had raised a "genuine issue of material fact" as to whether she was "substantially limited in the major life activity of performing manual tasks" by alleging that nerve damage in her hand limited her ability to garden, sew, button clothing, hold certain objects, write for long periods of time, perform household chores, and eat with utensils), *with Hainke v. Gleeson, Sklar, Sawyers & Cumpata LLP*, 71 F. Supp. 2d 885, 890 (dismissing an ADA claim where the plaintiff alleged that she had nerve damage but "[did not identify] any major life activity that [was] substantially limited" as a result).

Schmiege's allegation that he requires a longer mattress based on his unusual height is insufficient to support an inference that he is a qualified individual within the meaning of the ADA.  *See Gowins*, 2002 WL 1770772, at *10.  And while he also says that his "feet [and] head hang off the ends" of a normal-sized bed, exacerbating "serious

nerve damage to [his] neck, back, right arm[,] [and] right hand," Docket Item 1 at 5, 38, he still does not explain how that "substantially limits" his ability to perform any major life activity. Indeed, while Schmiege alleges that the nerve damage and its exacerbation by his sleeping conditions causes him pain, *id.*, he does not suggest how this pain affects his day-to-day life, let alone how it substantially limits his ability to perform a major life activity. *See Lapinsky*, 2001 WL 210288, at *4.[8]

In his response to the defendants' motion to dismiss, Schmiege says that he "was discriminated against and deni[ed] [his] rights to attend any/all programs and church services due to [the] defendants' malicious, [i]ll[-]will acts [that] caused [him] worse pain and agony." Docket Item 23 at 2. But he does not allege that any disability limits his ability to attend programs and church services. On the contrary, Schmiege suggests that he does not attend these events not because of any disability, but because the defendants have excluded him from participating. *See id.*[9] And Schmiege

---

[8] Schmiege has informed the Court that he has some difficulty writing due to pain in his hand and arm, *see* Docket Items 19, 20, and 21, but his complaint does not include anything to that effect, *see* Docket Item 1.

[9] This claim could be relevant to the question of whether Schmiege was "excluded from participation in a public entity's services, programs[,] or activities or was otherwise discriminated against," *Hargrave*, 340 F.3d at 34-35 (quoting 42 U.S.C. § 12132), but because Schmiege has failed to plead that he is a qualified individual with a disability, the Court does not reach this question.

Moreover, while the allegations in Schmiege's response might suggest a violation of his right to attend religious services under the First Amendment or the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), *see Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (citing 42 U.S.C. § 2000cc *et seq.*) (explaining that RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest"), his complaint does not allege anything along those lines, and so the Court does not address such a claim. *See, e.g., Joe Hand Promotions, Inc. v. Boyd*, 2020 WL

does not even allege that his short bunk and the resulting exacerbation of nerve damage interfere with his sleep.

In sum, Schmiege has not alleged that he has an impairment affecting his ability to care for himself, eat, sleep, walk, or perform some other major life activity.  He therefore has failed to state a plausible ADA claim because he has not pleaded that he is a qualified individual with a disability.

### B.    Eighth Amendment Claims

### 1.    Conditions in the SHU

Schmiege also alleges that the conditions in his SHU cell at Attica violated the Eighth Amendment.  Docket Item 1 at 6-7.  He brings a section 1983 claim against White, Burns, Emke, Snyder, and Couch, who he says "put [him]" in the cell.  *Id.* at 5-6. The defendants argue that this claim must be dismissed for three reasons.  First, they argue that Schmiege has not alleged that each defendant was "individually responsible for the conditions in [Schmiege's] cell."  Docket Item 15-1 at 16-18.  Second, they argue that Schmiege has not satisfied the objective and subjective requirements of a conditions-of-confinement claim.  *Id.* at 18-21.  Finally, they argue that they are entitled to qualified immunity.  *Id.* at 21-22.

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege "(1) that the deprivation alleged [was] 'objectively sufficiently serious' such that [he] was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the

---

486398, at *1 n.2 (W.D.N.Y. Jan. 30, 2020) (declining to address an issue that the plaintiff did not raise in its complaint).

unnecessary and wanton infliction of pain.'"  *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  A "sufficiently culpable state of mind" requires that a defendant act with "deliberate indifference"; the defendant must "know of and disregard an excessive risk to inmate health or safety." *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (alterations omitted) (quoting *Farmer*, 511 U.S. at 837).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* (quoting *Farmer*, 511 U.S. at 837).

The Eighth Amendment "does not mandate comfortable prisons," *Davidson v. Conway*, 318 F. Supp. 2d 60, 62 (W.D.N.Y. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)) and "'[n]ormal' conditions of SHU confinement do not amount to an Eighth Amendment violation," *Hattley v. Goord*, 2006 WL 785269, at *6 (S.D.N.Y. Mar. 27, 2006) (citing *Shannon v. Selsky*, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005); *Gulley v. Roach*, 2004 WL 2331922, at *11 (W.D.N.Y. Oct. 15, 2004); *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002)).  "[I]nhumane" conditions violate the Eighth Amendment, however.  *Farmer*, 511 U.S. at 832 ("The Amendment [] imposes duties on [prison] officials, who must provide humane conditions of confinement[, such as] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care.").

Schmiege alleges that his SHU cell "was cover[e]d in bodily fluids [and] cock roaches [sic] [and] was freezing cold with absolutely no heat at all."  Docket Item 1 at 5-7, 22.  Those allegations are "objectively sufficiently serious" to survive a motion to dismiss.  *See Trammell*, 338 F.3d at 161 (quoting *Farmer*, 511 U.S. at 834).  Indeed, a freezing cold cell alone—that is, "prolonged exposure to subzero temperatures[—

]violates the Eighth Amendment." *Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir.

2019) (summary order) (collecting cases).

The defendants argue that Schmiege has "failed to plead sufficient facts

concerning how cold . . . his cell actually was or the length [sic] of the allegedly cold

temperature." Docket Item 15-1 at 19. This Court disagrees. While Schmiege does not

put a number either to the temperature in his cell or to the length of time he was

exposed to the cold, he alleges that his cell was "freezing" and that the lack of heat

"caused [him] to become deathly sick." Docket Item 1 at 6. Taken together, these

allegations create a reasonable inference that Schmiege suffered "prolonged exposure

to subzero temperatures"—allegations sufficient to satisfy the objective prong of a

conditions-of-confinement claim. *See Reyes*, 779 F. App'x at 56. And his complaints

that his cell was "*cover[e]d* in bodily fluids [and] cock roaches [sic]," Docket Item 1 at 6

(emphasis added), only supports that conclusion. Conditions are "measured by [their]

severity and duration," *see Darnell v. Pineiro*, 849 F.3d 17, 31-32 (2d Cir. 2017), and

Schmiege's use of the word "covered" raises a reasonable inference that his exposure

to human waste and cockroaches was both severe and extensive. *See Walker v.

Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (noting that while the plaintiff failed to allege

"the exact extent or duration of [his] exposure to unsanitary conditions" and "details

about the temperatures in his cell," "[s]uch detailed allegations . . . are not required for a

*pro se* complaint to survive a motion to dismiss").

Schmiege has adequately alleged the deliberate-indifference prong of his

conditions-of-confinement claim as well. He alleges that he and "every other prisoner"

brought these conditions to the attention of "every single security supervisor[]," Docket

Item 1 at 6-7, and that "all [the defendants] acknowledge[d] on audio [and] video footage the dirty, dis[]gusting, unlivable[,] [and] [i]nhumane conditions of every cell on the SHU . . . [and] the very cold air on the entire gallery."  Docket Item 1 at 7 (capitalization omitted).  These allegations, taken as true, create a reasonable inference that the defendants were aware of the conditions in Schmiege's cell and knew that the conditions posed "a substantial risk of serious harm."  *See Vega*, 963 F.3d at 273 (quoting *Farmer*, 511 U.S. at 837).

But that does not end the inquiry.  To establish liability against a prison official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  And the defendants argue that Schmiege has not done so here.

First, they say that Schmiege has not alleged the defendants' personal involvement because his complaint "'lumps all [the] defendants together' without differentiating as to who did what."  Docket Item 15-1 at 16 (quoting *Tracey v. City of Geneva*, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018)).  Next, they note that Schmiege has not alleged that the defendants "had a role in the maintenance of [his cell]."  *Id.* at 17.  Finally, they argue that they cannot be held liable for the conditions of Schmiege's cell under *Tangreti* because an official "cannot be liable for failing to act on information."  *Id.* at 18.  This Court disagrees with all three arguments.

To start, this case is distinguishable from those in which courts have held that "lumping" defendants together undermines claims of personal involvement.  In those cases, the plaintiffs generally failed to "identif[y] any alleged conduct by any particular

14

individual." *Tracey*, 2018 WL 1509355, at *3; *see also Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) (noting that "a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations").  Here, in contrast, Schmiege alleges that White, Burns, Emke, Snyder, and Couch put him in the SHU cell.  Docket Item 1 at 5-6.  Especially because *pro se* pleadings are liberally construed, s*ee Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), Schmiege has adequately alleged that those defendants either physically placed him in the SHU cell or made the decision to confine him there.  So Schmiege has not simply lumped the defendants together; rather, he has alleged that each of them was responsible in some way for his confinement in the SHU cell.

The defendants' second and third arguments fail for the same reason: by alleging that White, Burns, Emke, Snyder, and Couch confined him in a cell with conditions that violated the Eighth Amendment, Schmiege has alleged that "[the defendants'] conduct [was] the proximate cause of the alleged Eighth Amendment violation."  *See Abernathy v. Comm'r of Corr.*, 2021 WL 1240018, at *6 (D. Conn. Apr. 2, 2021).  In other words, while the defendants are correct that simply alleging that they were aware of the conditions of Schmiege's confinement would not be enough to sustain a conditions-of-confinement claim, *see Tangreti*, 983 F.3d at 618-19, Schmiege has alleged more than that.  And because Schmiege alleges that the defendants subjected him to unconstitutional conditions of confinement by putting him in the SHU cell, he need not allege that they were responsible for the maintenance of the cell.

Finally, the defendants assert a qualified immunity defense.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations and internal quotation marks omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation and internal quotation marks omitted).

A defendant asserting qualified immunity at the motion to dismiss stage "faces a formidable hurdle" because "the plaintiff is entitled to all reasonable inferences from the facts alleged." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004). And generally, qualified immunity should be resolved on summary judgment rather than on a motion to dismiss. *See id.* at 436 (stating that a motion to dismiss on qualified immunity grounds "may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'" (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992))); *see also Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) ("Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alterations, citations, and internal quotation marks omitted)); *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("We caution, however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.").

Here, the defendants argue that they are entitled to qualified immunity because "there was no way for [them] to know that their conduct violated clearly established law" since "the legal issue of what constitutes personal involvement was unsettled at the time

of the alleged wrongs."  Docket Item 15-1 at 21-22.  Essentially, they claim that the degree of personal involvement required to impose liability on a prison official was in question at the time Schmiege was in the SHU cell.  But they do not address whether Schmiege had a clearly established right to avoid the conditions of confinement about which he complains.  And for that reason, they have not raised a viable claim of qualified immunity.

Both because qualified immunity is generally a question to be resolved on summary judgment and because the defendants have not raised any reason why they might be entitled to qualified immunity, their motion to dismiss based on qualified immunity is denied.

Schmiege's conditions-of-confinement claim regarding the conditions of his SHU cell therefore may proceed.

### 2.    Bed Frame and Mattress

Although Schmiege's allegations do not state a claim under the ADA, his complaint, read liberally, *see Cuoco*, 222 F.3d at 112, can be construed as bringing two Eighth Amendment claims regarding his need for an extra-long bed: an inadequate-medical-care claim and a conditions-of-confinement claim.

"To establish an Eighth Amendment violation based on the alleged inadequacy of prison medical treatment or the withholding of essential health care, [a] plaintiff must prove that the defendants' actions or omissions amounted to 'deliberate indifference to a serious medical need.'"  *Ross v. Kelly*, 784 F. Supp. 35, 43 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could

result in further significant injury or the unnecessary and wanton infliction of pain.'"
*Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*,
143 F.3d 698, 702 (2d Cir. 1998)).

"[A] complaint that a physician has been negligent in diagnosing or treating a
medical condition does not state a valid claim of medical mistreatment under the Eighth
Amendment.  Medical malpractice does not become a constitutional violation merely
because the victim is a prisoner."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.
1996) (quoting *Estelle*, 429 U.S. at 106).  Nevertheless, "certain instances of medical
malpractice may rise to the level of deliberate indifference," such as "when the
malpractice involves culpable recklessness, i.e., an act or failure to act by the prison
doctor that evinces a conscious disregard of a substantial risk of serious harm."  *Id.*
(citation and internal quotation marks omitted).  For example, allegations that "[p]rison
officials . . . deliberately def[ied] the express instructions of a prisoner's doctors," or that
they "deliberately interfered with [a prisoner's] medically prescribed treatment solely for
the purpose of causing [the prisoner] unnecessary pain," are sufficient to state a
"colorable constitutional claim of deliberate indifference."  *See Gill v. Mooney*, 824 F.2d
192, 196 (2d Cir. 1987) (citations omitted).

As discussed above, a plaintiff bringing a conditions-of-confinement claim must
allege "(1) that the deprivation alleged [was] 'objectively sufficiently serious' such that
[he] was denied 'the minimal civilized measure of life's necessities,' and (2) that the
defendant official possessed a 'sufficiently culpable state of mind,'" *Trammell*, 338 F.3d
at 161 (quoting *Farmer*, 511 U.S. at 837), that is, that the defendant acted with
"deliberate indifference," *Vega*, 963 F.3d at 273 (quoting *Farmer*, 511 U.S. at 837).

18

And for both an inadequate-medical-care claim and a conditions-of-confinement claim, the plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

At the motion to dismiss stage, Schmiege's allegations are sufficient to establish that he has a serious medical condition and need for a longer mattress.  First, Schmiege has provided evidence indicating that three other facilities granted his request for an extra-long mattress and that a doctor at one of those facilities signed off on that request. *See* Docket Item 1 at 37-39.  Additionally, Schmiege alleges that his severe nerve damage was proven by EMG testing performed on March 5, 2021, and that sleeping in a normal-sized bed exacerbates that nerve damage.  *Id.* at 5, 38.  Finally, he says that his nerve damage and sleeping conditions cause him great pain.  *Id.*  Given those allegations, denying Schmiege a mattress on which he can sleep without exacerbating his nerve damage is an "unnecessary . . . infliction of pain," making that nerve damage a serious medical condition.  *See Harrison*, 219 F.3d at 136 (quoting *Chance*, 143 F.3d at 702).

The question, then, is whether Schmiege has pleaded that White's, Williams's, and Clinton's refusal to provide him with an extra-long mattress "amount[s] to 'deliberate indifference to [Schmiege's] serious medical need.'"  *See Ross*, 784 F. Supp. at 43 (citing *Estelle*, 429 U.S. at 106).  And although it is a close question, this Court finds that he has.

Schmiege alleges that he repeatedly requested a longer bed, *see* Docket Item 1 at 5, 14-15, 21, 25-26, 28, 30, 32, 35-36, and that he provided Attica officials with "solid

[proof that he had been given this] reasonable accommodation[] at all of [his] prior facilit[ies]," *id.* at 25 (capitalization omitted).  But Attica officials informed Schmiege only "that medical orders and permits do not transfer between facilities and require approval of the current facility physician," *id.* at 28, and told him that his grievance had been denied "for lack of medical documentation" but that if his medical condition changed, he could submit another accommodation request, *id.* at 26.

Under the circumstances—and giving Schmiege the benefit of every reasonable inference that can be drawn in his favor—the Court finds that he has raised a viable inadequate-medical-care claim based on his mattress.  Read generously, the complaint suggests that Attica officials did nothing about Schmiege's need for an extra-long bed even though they knew that (1) he needed a longer mattress to alleviate his pain, *id.* at 25; (2) he had been given a longer mattress at every other prison where he was confined, *id.* at 25, 37-39; and (3) in fact, a physician had found that he needed a longer mattress, *id.* at 38.  It may very well be that the defendants eventually will be able to show that they investigated Schmiege's claimed need for a longer mattress and either found that it was not necessary or that they could not do anything about it because of the pandemic or for some other reason.  But at this early stage, Schmiege has adequately alleged that the defendants acted with deliberate indifference to his serious medical need.

Schmiege's conditions-of-confinement claim regarding his mattress follows a similar analysis.

> [F]or [conditions-of-confinement] complaints concerning an inadequate mattress, a plaintiff must allege that: (1) he ha[s] a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he

> requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety.

*Lacen v. Aygemong*, 2020 WL 4003482, at *3 (S.D.N.Y. July 15, 2020) (citation and internal quotation marks omitted).

As noted above, Schmiege has alleged that: (1) he requires an extra-long bed due to his height and nerve damage, Docket Item 1 at 5, 38; (2) he informed the defendants of his medical condition, *id.* at 25; (3) he requested a longer mattress to accommodate that condition, *id.* at 5; and (4) the defendants acted with deliberate indifference when they denied that request.  He therefore has pleaded both the objective component and the subjective component of a conditions-of-confinement claim.  And Schmiege has sufficiently alleged that White, Williams, and Clinton, "through [their] own individual actions, ha[ve] violated the Constitution" because he says that these three defendants denied his requests for a longer mattress, causing the alleged Eighth Amendment violations.  *See Tangreti*, 983 F.3d at 618.

Therefore, Schmiege's Eighth Amendment claims regarding White's, Williams's, and Clinton's denial of his request for an extra-long mattress may proceed as both an inadequate-medical-care claim and a conditions-of-confinement claim.[10]

---

[10] The Court recognizes that it dismissed Schmiege's other claims based on inadequate medical care.  *See* Docket Item 7 at 13-15.  Those claims did not relate to his claim about needing a longer mattress, however.  And while the Court agrees with the defendants that Schmiege's claim about the mattress is not viable as an ADA claim, it may conceivably be viable as an Eighth Amendment claim.  Therefore, and to give the *pro se* plaintiff the benefit of every doubt, *see Cuoco*, 222 F.3d at 112, the Court construes the mattress claim as an Eighth Amendment claim and allows it to proceed, at least for the time being.

### C.     Retaliation (First Amendment)

Finally, the defendants argue that Schmiege's retaliation claim is "wholly conclusory" and must be dismissed.  Docket Item 15-1 at 22-25.  This Court agrees: Schmiege has not provided sufficient detail to state a plausible retaliation claim regarding the Tier III ticket issued to him, and he has failed to allege an adverse action with regard to the verbal harassment by Attica staff.

To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action.  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  "[B]ecause of the 'ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care.'"  *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case [and] ought usually to be pursued with full discovery[''];  (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[, and] will support at least documentary discovery[''];  [or] (3) "a complaint which alleges retaliation in wholly conclusory terms [and] may safely be dismissed on the pleadings alone."

*Id.* (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

### 1.     Fabricated Misbehavior Ticket

Schmiege claims that after he "reported [] Couch . . . for misconduct [and] abuse of power," Couch retaliated against him by writing a "fabr[i]cated Tier [III] ticket full of

22

lies." Docket Item 1 at 7 (capitalization omitted). In fact, Schmiege alleges that Couch's charges "were proven to be lies after [Schmiege] had the hearing officer pull the audio [and] video footage from the incident." *Id.* (capitalization omitted). In their motion to dismiss, the defendants argue that Schmiege has failed to plead the necessary causal connection between his reporting Couch and the fabricated misbehavior ticket. Docket Item 15-1 at 23.

To prove a causal connection between the protected speech and the alleged retaliation, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison [official's] decision to [act against] the plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff may rely on circumstantial evidence—for example, proximity in time—to prove causation. *See Colon*, 58 F.3d at 872-73; *see also Espinal*, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." (citations omitted)).

Schmiege alleges that Couch wrote the fabricated ticket after he reported her, Docket Item 1 at 7, but he does not say when either of those events occurred. *See id.*; *see also* Docket Item 15-1 at 23 ("Simply alleging [that Schmiege] complained about [] Couch at some uncertain time, in an unspecified manner . . . fails to provide specific and detailed factual allegations, as required."). So although "[a] plaintiff can establish a causal connection . . . by showing that protected activity was close in time to the adverse action," *Espinal*, 558 F.3d at 129, without knowing the dates of Schmiege's

complaint and the false misbehavior report, the Court cannot determine whether the two were sufficiently close in time to give rise to an inference of causation.

Because Schmiege has not alleged facts supporting an inference of causation between the allegedly false misbehavior report and his complaint about Couch's conduct, he has stated only a conclusory—rather than a plausible—retaliation claim that cannot survive a motion to dismiss.

### 2.    Verbal Harassment

Schmiege also alleges that the DOCCS security staff made "dehumanizing comments" about him and spread "rumo[]rs" that he is a "[r]at snitch."  Docket Item 1 at 7.

"To adequately plead an adverse action"—the second prong of a retaliation claim—"a plaintiff must allege that defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (citation omitted).  Accordingly, "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001).  "Insulting or disrespectful comments directed at an inmate generally" do not constitute an adverse action.  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citations omitted).

Schmiege's conclusory allegation that security staff made "dehumanizing comments" about him and called him a "[r]at snitch" does not raise a viable retaliation claim.  Indeed, several courts, including the Second Circuit, have found that similar allegations do not plead adverse action.  *See, e.g.*, *Dawes*, 239 F.3d at 493 (calling

plaintiff an "informant" and a "rat" not adverse action); *Morales*, 278 F.3d at 131 (calling plaintiff "a stoolie in front of other inmates" not adverse action); *Bouknight v. Shaw*, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009) (calling plaintiff a "rat, snitch[,] and a homosexual" failed to state a claim under section 1983).

Because the security staff's alleged comments, standing alone, are not adverse action, Schmiege has failed to state a retaliation claim based on those comments.

### D.   Leave to Amend

Schmiege has not asked for leave to amend his complaint.  Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and because of Schmiege's *pro se* status, he may file an amended complaint, within 60 days, that corrects the deficiencies noted above.

Schmiege is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint ***must include all allegations against each of the defendants*** so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

## II.   MOTION FOR INJUNCTIVE RELIEF AND RELEASE FROM CUSTODY

Schmiege has moved for injunctive relief and release from custody, repeating his ADA and section 1983 claims and explaining that—at the time of the motion—he had returned to Attica, where he was still being "deliberately deni[ed]" his "rights to

[r]easonable [a]ccommodations."  Docket Item 25 at 2-3; Docket Item 26.  He asked this

Court to "grant [his] immediate release from prison custody" or, in the alternative, order

him "transfer[red] to a medium security prison . . . that will provide [him] with [his]

reasonable accommodations."  Docket Item 25 at 3-4 (capitalization omitted).

"'A preliminary injunction is an extraordinary remedy never awarded as of right'

and 'is one of the most drastic tools in the arsenal of judicial remedies.'"  *Rochester*

*Drug Co-Op., Inc. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 348 (W.D.N.Y. 2020) (first

quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); then quoting

*Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  "A

party seeking a preliminary injunction must generally show a likelihood of success on

the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the

balance of equities tips in the party's favor, and that an injunction is in the public

interest."  *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter,* 555 U.S. at

20).  In the Second Circuit, a court also may issue a preliminary injunction when a

plaintiff demonstrates "(1) either (a) a likelihood of success on the merits or (b)

sufficiently serious questions going to the merits to make them a fair ground for litigation

and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable

harm in the absence of the injunction."  *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-

84 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110,

116 (2d Cir. 2009)).

The Court denies Schmiege's motions for injunctive relief for two reasons.  First,

although Schmiege has pleaded some viable claims, he has not demonstrated a

likelihood of success on the merits of his claims, nor has he shown that he will suffer

irreparable harm in the absence of injunctive relief.  Second, Schmiege is currently

housed at Five Points, not Attica.  Docket Item 31.[11]  "It is settled in th[e Second] Circuit

that a transfer from a prison facility moots [a request] for injunctive relief against the

transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam);

*see also Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("[A]n inmate's transfer

from a prison facility generally moots claims for declaratory and injunctive relief against

officials of that facility." (citation omitted)).  Therefore, Schmiege's motions for injunctive

relief, Docket Items 25 and 26, are moot.

Moreover, "[t]o the extent [Schmiege] seeks to be released from custody, such

relief is not available in a [s]ection 1983 action."  *Brown v. Freeport Police Dep't*, 2013

WL 5629637, at *3 (E.D.N.Y. Oct. 9, 2013) (collecting cases).  Schmiege's only avenue

for seeking release from custody is to file a habeas corpus petition.  *See Muhammad v.

Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to

particulars affecting its duration are the province of habeas corpus." (citation omitted)).

Therefore, insofar as Schmiege's motion for an injunction seeks his release from

custody, it is denied for that reason as well.

## III.   MOTION FOR SUMMARY JUDGMENT

Schmiege also has moved for summary judgment on his claims.  Docket Item 25

at 3.  "A motion for summary judgment may be granted 'if the movant shows that there

---

[11] Schmiege apparently has been transferred six times during this litigation.  *See* Docket Item 6 (transfer to Five Points); Docket Item 21 (transfer to Wende Correctional Facility); Docket Item 24 (transfer back to Attica); Docket Item 28 (transfer to Collins Correctional Facility); Docket Item 30 (transfer to Auburn); Docket Item 31 (transfer back to Five Points).

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant."  *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.* (citing *Liberty Lobby*, 477 U.S. at 250).

For the reasons stated above, Schmiege has not adequately pleaded several of his claims.  And with respect to Schmiege's surviving claims, many questions of fact preclude summary judgment.  Indeed, based on Schmiege's complaint and the defendants' motion to dismiss, it is clear that if the defendants are "given the benefit of all permissible inferences," a rational factfinder could find in their favor on each of Schmiege's claims.  *See id.*  Schmiege's motion for summary judgment therefore is denied.

## IV.   MOTION FOR DEFAULT JUDGMENT

Finally, Schmiege has moved for a default judgment against the defendants because they "fail[ed] to respond back [to Schmiege's response to the motion to dismiss] . . . before or by March 14th[,] 2022."  Docket Item 29 at 4 (emphasis omitted).

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "The Clerk of the Court must enter the default if [the] defendant fails to plead or otherwise defend in response to a properly served and filed complaint."  *Doe v. Gooding*, 2021 WL 5991819, at *4 (S.D.N.Y. July 29, 2021) (alterations, citation, and internal quotation marks omitted).  "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (internal citations omitted).

The defendants have appeared and responded to the complaint by filing a motion to dismiss.  *See* Docket Item 15.  They were not obligated to reply to Schmiege's response to that motion, and declining to do so is not a "fail[ure] to plead or otherwise defend."  *See* Fed. R. Civ. P. 55(a).  The Court therefore denies Schmiege's motion for a default judgment.

## CONCLUSION

For the reasons stated above, Schmiege's motions for injunctive relief, Docket Item 25, for summary judgment, *id.*, and for a default judgment, Docket Item 29, are DENIED.  The defendants' motion to dismiss, Docket Item 15, is DENIED with respect to Schmiege's Eighth Amendment conditions-of-confinement and medical-care claims but will be granted with respect to all other claims unless Schmiege amends his complaint, within 60 days, to correct the deficiencies noted above.  No later than 30 days after any amended complaint is filed, the defendants may answer, move against,

or otherwise respond to the amended complaint.  If Schmiege does not file an amended complaint within 60 days, then his remaining claims will be dismissed as noted above.



SO ORDERED.

Dated:   November 14, 2022
         Buffalo, New York


                                          _____*/s/ Lawrence J. Vilardo*_____
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE