UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN E. SCHMIEGE,

        Plaintiff,

   v.                                     21-CV-418-LJV
                                             DECISION & ORDER

THE STATE OF NEW YORK, *et al.*,

        Defendants.
_____

On March 22, 2021, the *pro se* plaintiff, Brian E. Schmiege, commenced this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 ("ADA"). Docket Item 1.  Schmiege, who currently is an inmate at the Five Points Correctional Facility ("Five Points"), asserts claims arising from his time at the Attica Correctional Facility ("Attica").  *Id.*; Docket Item 34 (amended complaint).  He names several Attica employees as defendants: Deputy Superintendents of Security Sean White and Joey Clinton; Lieutenant Rodney Burns; Sergeants Troy Emke and Andrew Snyder; Dr. David Williams; and Mental Health Therapist Elisabeth Couch.  Docket Item 34.

After the defendants moved to dismiss the complaint, Docket Item 15, this Court found that Schmiege's ADA claims and retaliation claims were subject to dismissal and granted Schmiege leave to amend those claims, Docket Item 33.  But the Court allowed some of Schmiege's Eighth Amendment claims to proceed.[1]  *Id.*

---

[1] The Court previously dismissed other Eighth Amendment claims when it screened the complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See* Docket Item 7.

On November 23, 2022, Schmiege filed an amended complaint reasserting his ADA claims, retaliation claims, and surviving Eighth Amendment claims and asserting an additional claim for violation of his rights under the Free Exercise Clause of the First Amendment.[2]  Docket Item 34.  On December 12, 2022, the defendants moved to dismiss Schmiege's ADA claims, retaliation claims, and free exercise claim.  Docket Item 35.  On April 26, 2023, Schmiege responded, Docket Item 42, and on May 22, 2023, the defendants replied.  Docket Item 44.

For the reasons that follow, the defendants' second motion to dismiss is granted as to Schmiege's ADA claims and will be granted as to Schmiege's retaliation and free exercise claims unless Schmiege files a second amended complaint addressing the deficiencies noted below.

---

[2] It appears that the first pages of Schmiege's second amended complaint are photocopies of the original complaint.  *Compare* Docket Item 1 *with* Docket Item 34 at 1-7.  The amended complaint therefore seems to reassert section 1983 claims against the defendants in their official capacities and claims for injunctive relief—claims that this Court had dismissed without leave to amend.  *See* Docket Items 7 and 33.

The Court assumes that Schmiege is not actually reasserting those claims but rather included those pages from his original complaint as a matter of convenience.  But if Schmiege does intend to reassert those claims as to his confinement at Attica, they are dismissed for the reasons stated in this Court's prior orders.  *See* Docket Item 7 at 10-11 (dismissing Schmiege's official-capacity section 1983 claims on the basis of sovereign immunity); Docket Item 33 at 25-27 (dismissing Schmiege's claims for injunctive relief as moot).  If, on the other hand, Schmiege seeks injunctive relief relating to his confinement at Five Points, *see* Docket Item 42 at 4 (stating that Schmiege has not seen a doctor "in over a year and a half"), he must bring a separate action against the appropriate defendants.

## **FACTUAL BACKGROUND**[3]

Schmiege is at least six-feet-six-inches tall and suffers from "sev[ere] nerve damage to [his] neck, back, right arm[, and] right hand," as documented by his medical records and confirmed by electromyography testing. Docket Item 34 at 4. Due to his height, Schmiege requires a "long bed frame [and] hospital[-]style mattress" so that his head and feet do not hang off his bed and exacerbate his nerve damage. *Id.* at 4, 9, 11. Schmiege received those accommodations at "all of [his] prior prisons." *Id.* at 4, 8. But when Schmiege was housed at Attica, Deputy Superintendents White and Clinton and Dr. Williams—who "ha[d] the power to approve or deny any . . . reasonable accommoda[]tions" at Attica—denied him an extra-long bed and mattress despite his "numerous" requests for those accommodations. *Id.* at 4, 8; *see* Docket Item 33 at 3-4.

The uncomfortable sleeping conditions interfered with Schmiege's sleep. Docket Item 34 at 11. Additionally, Schmiege was unable to attend "mandatory programs," "religious services," and "special holiday events" at Attica because of the "pain and agony" caused by having to sleep on a standard bed. *Id.* at 9. Apparently, however, Schmiege's pain was not the only thing that prevented him from attending those services and events: A "company officer," "Mr. K," "refused to allow [Schmiege] to attend," saying that Schmiege was "in too much pain to go to programs." *Id.* at 9-10. In

---

[3] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the amended complaint, Docket Item 34. Some capitalization is omitted in quotations taken from the amended complaint. Because the defendants seek dismissal only of Schmiege's ADA claims and First Amendment claims, the Court recounts only the facts relevant to those claims.

3

fact, Mr. K did not allow Schmiege to attend religious services on three consecutive Sundays.  *Id.*

In addition to all that, Schmiege had issues with his mental health therapist. More specifically, on February 14, 2021, Schmiege raised concerns with Mental Health Therapist Couch that Couch had misclassified his "mental health level" and that, as a result, Schmiege's records indicated that his mental illness was more severe than it actually was.  *Id.* at 12.  Couch "became very defensive and dis[]respectful and walked away" from the conversation, so Schmiege reported Couch to the Central New York Psychiatric Center ("CNYPC").  *Id.*  A few days later, on February 18, 2021, Couch showed Schmiege a copy of his complaint to CNYPC and wrote a "fabr[i]cated Tier [III] Ticket" alleging that Schmiege had told Couch that he loved her.  *Id.* at 12-13.

During the hearing on the ticket, two other Attica officials, Officer Duffy and Mr. Minch, falsely testified that they heard Schmiege tell Couch that he loved her.  *Id.* at 13.  But after Schmiege requested "audio and video camera footage" that disproved their testimony, the ticket was dismissed.  *Id.*

Schmiege filed grievances against Couch and the testifying officers related to the ticket and the hearing.  *Id.*  After he reported that misconduct, Schmiege was "targeted, retaliated against, [and] [] subject[ed] to victimizing acts of dehumanizing comments." *Id.* at 6.  Minch made fun of Schmiege's appearance in the shower and repeatedly called Schmiege "rat snitch" and "Master Splinter."[4]  *Id.* at 13.  Snyder and four other

---

[4] The Court assumes that "Master Splinter" is a reference to the *Teenage Mutant Ninja Turtles* character Splinter, who is a rat.  *See Teenage Mutant Ninja Turtles: Mutant Mayhem* (Paramount Pictures 2023).

4

officers heard Minch harassing Schmiege but did not intervene.  *Id.*  Minch also attempted to bribe other prisoners to "stab [Schmiege] to death."  *Id.* at 14.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

The defendants argue that Schmiege has failed to state claims for violations of his rights under the ADA and the First Amendment.  Docket Item 35-1.  Schmiege responds that those claims should not be dismissed.  Docket Item 42.  Because Schmiege has not plausibly alleged that the defendants violated the ADA, retaliated against him, or denied him the right to exercise his religion, this Court agrees with the defendants.

I. **ADA CLAIM**

This Court previously found that Schmiege had "not stated a plausible ADA claim" because he failed to plausibly allege that he is a qualified individual with a disability within the meaning of Title II of the ADA.  Docket Item 33 at 6-11.  The

amended complaint reasserts Schmiege's claim that White, Williams, and Clinton violated the ADA by refusing to provide him the reasonable accommodation of an extra-long mattress and bed frame, Docket Item 34 at 4, but that claim still fails.

As a threshold matter, to the extent that Schmiege asserts ADA claims against the defendants in their individual capacities, those claims are dismissed because Title II of the ADA does not allow individual-capacity suits against state officials. *See Thompson v. N.Y. State Corr. & Cmty. Supervision*, 2022 WL 4562318, at *11 (W.D.N.Y. Sept. 29, 2022) (citing *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)). And Schmiege's official-capacity ADA claims fail because he still has not plausibly alleged that he is entitled to relief under that statute.

"Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting 42 U.S.C. § 12132). To state a claim under the ADA, a plaintiff must allege "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs[,] or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003) (citing 42 U.S.C. § 12132); *see Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

> A "qualified individual" is
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication,

> or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131(2).  "Disability" means "physical or mental impairment that substantially limits one or more major life activities," *id.* § 12102(1)(A), such as—but not limited to—"caring for oneself, performing manual tasks, . . . eating, sleeping, walking, . . . [or] working," *id.* § 12102(2).  An impairment is not a disability unless it substantially limits a major life activity.  29 C.F.R. § 1630.2(j)(1)(ii); *see Capobianco v. City of New York*, 422 F.3d 47, 56-57 (2d Cir. 2005); *see also* Docket Item 33 at 9 ("To plausibly state a claim that he is a qualified individual with a disability, a plaintiff must specifically allege how his impairment affects his ability to perform a major life activity." (citations omitted)).

This Court noted previously that "height is not ordinarily an impairment covered as a disability under the ADA" and found "Schmiege's allegation that he requires a longer mattress based on his unusual height . . . insufficient to support an inference that he is a qualified individual within the meaning of the ADA."  Docket Item 33 at 8-9 (internal quotation marks omitted) (citing, *inter alia*, *Gowins v. Greiner*, 2002 WL 1770772, at *10 (S.D.N.Y. July 31, 2002)).  The Court also noted that "generally, allegations of pain are insufficient to support a claim that an individual is disabled under the ADA."  *Id.* at 9 (collecting cases).  It acknowledged Schmiege's allegation that he suffers pain due to his nerve damage but concluded that he had not plausibly alleged that he is disabled because he had not "explain[ed] how that [pain] 'substantially limits' his ability to perform any major life activity."  *Id.* at 9-10.

7

Schmiege's amended complaint does not cure that deficiency.  As before, his height does not qualify as a disability.[5]  And while Schmiege reiterates that he suffers pain due to his height and nerve damage, "[t]he law is clear: chronic pain, alone, is not enough to create a disability."[6]  See Smith v. Walgreens Boots All., Inc., 2021 WL 391308, at *5 (N.D. Cal. Feb. 3, 2021) (collecting cases); see also Sneed v. City of N.Y. Dep't of Parks & Recreation, 2011 WL 4542960, at *3 (S.D.N.Y. Sept. 30, 2011) (noting that allegations of "Knee Pain/Neck Pain/Lung Problems" could not establish a disability under the ADA).

Schmiege seems to conflate the lack of treatment or accommodation for a health condition with discrimination based on a disability.  He may be entitled to relief if the defendants did not provide what he is entitled to receive to treat his height and nerve issues, and this Court allowed such claims to proceed as section 1983 claims under the Eighth Amendment.  See Docket Item 33 at 17-21.  But he has not alleged facts giving

---

[5] This Court previously noted that "[h]eight outside the 'normal' range that is 'the result of a physiological disorder' may be a disability."  Docket Item 33 at 8 n.7 (quoting Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997)).  Schmiege now asserts that his height is a "genetic" disability.  Docket Item 42 at 1.  But that vague assertion does not establish that Schmiege suffers from a "physiological disorder" that causes abnormal height, such as gigantism.  See Docket Item 44 at 5 (arguing that Schmiege's height "is a physical characteristic, not a physiological disorder").

[6] Schmiege says that his pain impacts his ability to attend prison programs.  Docket Item 34 at 9-10.  But like his response to the first motion to dismiss, see Docket Item 23 at 2, Schmiege's amended complaint suggests "that he does not attend th[o]se events . . . because [prison official] have excluded him from participating," see Docket Item 33 at 10; Docket Item 34 at 9-10.  That allegation falls short of plausibly alleging that Schmiege's pain itself substantially limits his major life activities.  See Docket Item 33 at 10.  Likewise, Schmiege's allegation that the defendants "purposely interfered with all of [his] daily meaningful[] life activities by depriving [him] of [his] ADA rights," Docket Item 34 at 11, indicates that it was Attica officials—not his pain—that limited Schmiege's activities.

rise to a plausible claim that he has been discriminated against because of his disability, and his ADA claims are dismissed for that reason.[7]

## II.   SECTION 1983 CLAIMS

Schmiege also asserts retaliation claims and a free exercise claim under section 1983.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  To establish liability against a prison official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).

### A.   Retaliation

To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the

---

[7] Because the Court finds that Schmiege has not plausibly alleged that he has a disability within the meaning of the ADA, it need not—and does not—reach the defendants' other arguments in support of dismissal of Schmiege's ADA claims.  *See* Docket Item 35-1 at 7-13.

protected speech or conduct and the adverse action.  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

### 1. Fabricated Misbehavior Ticket

Schmiege alleges that after he reported Couch to CNYPC, Couch retaliated against him by writing a fabricated Tier III Ticket.  Docket Item 34 at 12-13.  That claim fails for two reasons.

First, Schmiege has not plausibly alleged that Couch took an adverse action against him.  The amended complaint does not allege that Schmiege suffered any consequences as a result of Couch's report; on the contrary, it alleges that Schmiege was exonerated after a hearing.  Docket Item 34 at 13.  And "[c]ourts in this [circuit] have routinely found the mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action."  *Berry v. Tremblay*, 2021 WL 1575951, at *4 (N.D.N.Y. Apr. 22, 2021), *report and recommendation adopted*, 2021 WL 2580100 (N.D.N.Y. June 23, 2021) (collecting cases).

In response to the motion to dismiss, Schmiege asserts that he was placed in the SHU[8] because of the ticket.  Docket Item 42 at 7.  But that assertion is nowhere to be found in the amended complaint, which alleges only that Schmiege was confined in the SHU in January 2021, Docket Item 34 at 4—weeks before Couch allegedly wrote the false ticket.

And even if Schmiege had plausibly alleged adverse action, his retaliation claim against Couch fails because he had not exhausted his administrative remedies when he

---

[8] The SHU—short for "special housing unit"—houses inmates "for disciplinary or protective purposes."  *See Malik v. Miller*, 679 F. Supp. 268, 269 (W.D.N.Y. 1988).

filed his complaint.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step . . . grievance process.  The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee.  Next, the inmate may appeal an adverse decision to the prison superintendent.  Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC").  In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under [section] 1983.

*Allah v. Latona*, 540 F. Supp. 3d 325, 330 (W.D.N.Y. 2021) (citation omitted).

Schmiege alleges that he filed a grievance against Couch for writing the false ticket, *see* Docket Item 34 at 13, but he does not provide details suggesting that he completed the second and third steps of the exhaustion process, *see generally* Docket Item 34.  Indeed, as the defendants argue, it is unlikely that Schmiege exhausted his administrative remedies in the 32 days between issuance of the ticket and commencement of this action.  *See* Docket Item 35-1 at 16 (noting that CORC "has 30 days . . . to decide a grievance appeal"); *see also Williams v. King*, 56 F. Supp. 3d 308, 321 (S.D.N.Y. 2014) (noting "subsequent exhaustion after suit is filed is insufficient" to satisfy the PLRA's exhaustion requirement (alterations and citations omitted)).  Schmiege's conclusory response that he "file[d] all grievances in order" and "follow[ed] proper steps and procedures" does not suggest otherwise.  *See* Docket Item 42 at 7-8.

Schmiege's retaliation claim against Couch therefore is subject to dismissal because Schmiege has failed to plausibly allege (1) that Couch took an adverse action against him and (2) that he exhausted his administrative remedies.  But in light of his

11

*pro se* status and because this is the first time the defendants have asserted those arguments, Schmiege may have a final opportunity to amend his retaliation claim against Couch. *See Cuoco*, 222 F.3d at 112. Accordingly, Schmiege may file a second amended complaint providing the specific dates of (1) any adverse actions he suffered as a result of the false misbehavior ticket and (2) the documents he filed and responses he received establishing that he exhausted his administrative remedies with respect to his retaliation claim against Couch.

### 2. Harassment

Schmiege also alleges that Attica officials retaliated against him for reporting misconduct by harassing him. Docket Item 34 at 6, 13-14. But the only official he identifies by name is Minch, who he says verbally harassed him and tried to bribe other prisoners to attack him. *Id.* Minch is not a defendant in this action, and Schmiege does not allege that any of the named defendants were personally involved in the harassment or attempts to harm him.[9] *See generally* Docket Item 34.

---

[9] Schmiege's allegation that Snyder heard Minch harassing Schmiege and failed to stop the harassment, Docket Item 34 at 13, does not plausibly suggest that Snyder himself was personally involved in the harassment as required by *Tangreti*, 983 F.3d at 618. Nor does it raise a viable failure to intervene claim against Snyder because Schmiege has not plausibly alleged that a reasonable person would know that Minch's verbal harassment of Schmiege violated the Constitution. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (a prison officer may be held liable on a failure to intervene theory if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene" (citation omitted)). Indeed, this Court previously explained that verbal harassment alone does not constitute adverse action sufficient to sustain a retaliation claim. Docket Item 33 at 24-25.

Schmiege therefore has failed to state a retaliation claim related to the harassment he suffered at Attica. Nevertheless, in light of his *pro se* status, Schmiege may amend his complaint to add Minch as a defendant to this action or to allege facts showing that any named defendants retaliated against him for filing grievances. *See Cuoco*, 222 F.3d at 112.

### B. Free Exercise

A plaintiff asserting a claim for denial of his right to freely exercise his religion must show that the defendant imposed "a burden on his sincere religious beliefs." *Kravitz v. Purcell*, 87 F.4th 111, 115 (2d Cir. 2023). If a prisoner establishes that the defendant imposed such a burden, the defendant then must demonstrate that the imposition "is reasonably related to legitimate penological interests." *Id.* at 119 (citation omitted).

Schmiege alleges that an Attica official, "Mr. K," violated his right to free exercise by preventing him from attending religious services. Docket Item 34 at 9-10. But Schmiege does not name Mr. K as a defendant or allege that any of the named defendants were involved in that First Amendment violation. *See generally* Docket Item 34. Nor does Schmiege allege that his "sincere religious beliefs" require him to attend religious services. *Id.* In fact, while in response to the motion to dismiss Schmiege suggests that he is Jewish, Docket Item 42 at 8-9, the amended complaint does not even allege what religion Schmiege practices, *see* Docket Item 34.

Schmiege's free exercise claim therefore is subject to dismissal. But in light of his *pro se* status, Schmiege may amend his complaint to name Mr. K as a defendant

13

and to add allegations establishing that Mr. K or the named defendants violated his rights under the Free Exercise Clause.  See *Cuoco*, 222 F.3d at 112.

## CONCLUSION

For the reasons stated above, the defendants' second motion to dismiss, Docket Item 35, is granted as to Schmiege's ADA claims and will be granted as to his retaliation and free exercise claims unless, within 30 days of the date of this order, Schmiege files an amended complaint correcting the deficiencies noted above.

Schmiege is advised that an amended complaint is intended to **completely replace** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint **must include all allegations against each of the defendants** so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

The defendants shall answer or otherwise respond to any second amended complaint within 21 days of the date the second amended complaint is filed.  If Schmiege does not file a second amended complaint, the defendants shall answer the amended complaint within 60 days of the date of this order.

SO ORDERED.

Dated:   December 19, 2023
         Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE