**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**BRIAN E. SCHMIEGE,**

|  |  |
|---|---|
| **Plaintiff,** | **THIRD AMENDED** |
| | **COMPLAINT** |
| -against- | Index No. 21-CV-418LJV(F) |

**THE STATE OF NEW YORK,**

**JOEY CLINTON,**
*Attica Correctional Facility Deputy Superintendent for Programs*

**SEAN WHITE,**
*Attica Correctional Facility Deputy Superintendent of Security*

**DAVID WILLIAMS,**
*Attica Correctional Facility Services Health Director*

**ELISABETH COUCH, LMSW**
*New York State Office of Mental Health*

**ATTICA CORRECTIONAL FACILITY LIEUTENANT RODNEY BURNS,**

**ATTICA CORRECTIONAL FACILITY SERGEANT TROY EMKE,**

**ATTICA CORRECTIONAL FACILITY SERGEANT ANDREW SNYDER,**

**ATTICA CORRECTIONAL FACILITY OFFICER KLEPP,**

**ATTICA CORRECTIONAL FACILITY OFFICER DUFFY,**

**ATTICA CORRECTIONAL FACILITY OFFICER MINCH,**

**ATTICA CORRECTIONAL OFFICER JOHN/JANE DOE 1 – 9,**

**Defendants.**

_____

## PRELIMINARY STATEMENT

While incarcerated at Attica Correctional Facility, Plaintiff Brian E. Schmiege sought to freely practice his Jewish faith, receive basic and necessary medical care, and generally to be free from unconstitutional conditions of confinement that pose a serious risk to his health and safety. However, each attempt to exercise these basic and fundamental rights was swiftly and decisively thwarted by Defendants. At first, Defendants simply denied Schmiege his Kosher meals and medically necessary bed. When that did not deter Schmiege, Defendants placed him in the Special Housing Unit for extended periods of time, issued unsubstantiated restraint orders, and ultimately, placed a shield over Schmiege's cell, effectively cutting him off from all human contact and heat in the dead of winter. As Schmiege refused to back down, Defendants actions against Schmiege grew even more severe in nature ultimately causing Schmiege to suffer in agonizing pain, become life threateningly ill, and receive threats from Defendants to his safety and life. Defendants must be held accountable for their deliberate violations of Plaintiff's rights.

Therefore, Plaintiff, by his attorneys, Claire T. Sellers and Carolyn G. Nussbaum, as and for a Third Amended Complaint, respectfully allege as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States.

2. This action is brought pursuant to 42 U.S.C. § 1983 and the First, Eighth, and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1343(3) & (4), and 2201.

4.　　Venue is proper under Title 28 U.S.C. § 1391.

## **PROCEDURAL HISTORY**

5.　　From on or about October 1, 2020 until on or about May 17, 2021, Plaintiff

BRIAN E. SCHMIEGE was incarcerated at Attica Correctional Facility.

6.　　On or about March 22, 2021, Plaintiff commenced this action *pro se* under 42

U.S.C. § 1983 and the Americans with Disabilities Act of 1990 ("ADA"). Docket Item 1.

7.　　On or about January 25, 2022, Defendants filed a Motion to Dismiss this action.

Docket Item 23.

8.　　On or about April 29, 2022, Plaintiff filed a First Amended Complaint. Docket

Item 26.

9.　　On or about November 14, 2022, United States District Judge Lawrence J.

Vilardo issued a Decision and Order. Docket Item 33.

10.　　On or about November 23, 2022, Plaintiff filed a Second Amended Complaint.

Docket Item 34.

11.　　On or about December 12, 2022, Defendants filed a Motion to Dismiss this

action. Docket Item 35.

12.　　On or about December 19, 2023, United States District Judge Lawrence J. Vilardo

issued a Decision and Order. Docket Item 47.

13.　　On or about March 15, 2024, Defendants filed their Answer to Plaintiff's First

Amended Complaint. Docket Item 52.

14.　　On or about July 9, 2024, United States District Judge Leslie G. Foschio assigned

pro bono counsel, Claire T. Sellers and Carolyn G. Nussbaum. Docket Items 60 and 61.

15.     On or about September 3, 2024, Judge Foschio issued a scheduling order. Docket Item 64.

## PARTIES

16.     The plaintiff, BRIAN SCHMIEGE, DIN # 17B3495, at all relevant times herein was incarcerated at Attica Correctional Facility, in the Town of Attica, County of Wyoming and State of New York. Plaintiff is a devout and practicing member of the Jewish religion, a protected class.

17.     Upon information and belief, defendants were at all relevant times herein employed by the New York State Department of Corrections and Community Supervision (hereinafter "DOCCS") and/or within a correctional facility operated by the same. Defendants are and/or were employed in the following capacities:

a.     The Defendant, JOEY CLINTON, was employed as Deputy Superintendent for Programs at Attica Correctional Facility and conducted rounds in the Special Housing Unit (hereinafter "SHU") at all relevant times herein.

b.     The Defendant, SEAN WHITE, was employed as Deputy Superintendent for Security at Attica Correctional Facility and conducted rounds in the SHU at all relevant times herein.

c.     The Defendant, DAVID WILLIAMS, was employed as Facility Services Health Director at Attica Correctional Facility and served as such and conducted rounds in the SHU at all relevant time herein.

d.     The Defendant, ELISABETH COUCH, was employed as a Licensed Master Social Worker two (2) by the New York State Office of Mental Health (hereinafter "OMH") within the Attica Correctional Facility from approximately July 2019 to October 2021.

e.      The Defendant, RODNEY BURNS, was employed as a Lieutenant at Attica Correctional Facility and conducted rounds in the SHU at all relevant times herein.

f.      The Defendant, TROY EMKE, was employed as a Sergeant at Attica Correctional Facility at all times relevant herein.

g.      The Defendant, ANDREW SNYDER, was employed as a Sergeant at Attica Correctional Facility at all times relevant herein.

h.      Upon information and belief, ATTICA CORRECTIONAL FACILITY OFFICER KLEPP, ATTICA CORRECTIONAL FACILITY OFFICER DUFFY, ATTICA CORRECTIONAL FACILITY OFFICER MINCH, ATTICA CORRECTIONAL FACILITY OFFICER JOHN/JANE DOE 1- 9, were employed by DOCCS at Attica Correctional Facility at all relevant times herein.

## STATEMENT OF FACTS

18.     Prior to Plaintiff's incarceration at the Attica Correctional Facility, he was incarcerated at Sing Sing and Auburn Correctional Facilities.

19.     From on or about October 1, 2020 until June 17, 2021, Plaintiff was incarcerated at Attica Correctional Facility.

20.     After Plaintiff's incarceration at Attica Correctional Facility, Plaintiff was incarcerated at Five Points Correctional Facility.

21.     Since on or about June 24, 2024 Plaintiff has been incarcerated at Sing Sing Correctional Facility.

## Denial of Free Exercise of Religion

22.     While incarcerated at Auburn correctional facility, Plaintiff received Kosher meals, haircuts in accordance with his faith, and was able to study and practice his faith.

23.     While incarcerated at Five Points Correctional Facility, Plaintiff received Kosher meals, haircuts in accordance with his faith, and was able to pray and practice his faith.

24.     Since Plaintiff's incarceration at Sing Sing Correctional Facility, Plaintiff has received Kosher meals, haircuts in accordance with his faith, and is able to attend services, pray and practice his faith.

25.     During the entirety of Plaintiff's incarceration at Attica Correctional Facility, he was denied edible Kosher meals, denied haircuts in accordance with his faith, denied the right to attend services whether he was in general population or SHU, was harassed by Defendants when attempting to pray and practice his faith, and had his prayer and religious materials damaged by Defendants.

26.     During his incarceration at Attica Correctional Facility, Defendant KLEPP denied Plaintiff the right to attend religious services and special holiday events stating, "Aren't you in too much pain to go?", referencing Plaintiff's medical conditions.

27.     Defendant KLEPP did not allow Plaintiff to attend religious services on numerous occasions including three consecutive Saturdays.

28.     Between October 14, 2020 and February 11, 2021, Plaintiff filed at least 24 grievances pursuant to the prison's grievance procedure.

29.     On at least seven (7) occasions, Plaintiff's grievances addressed harassment by Defendants and interference with Plaintiff's ability to practice his religion creating a burden on his sincere religious beliefs.

30.     On or about October 21, 2020, Plaintiff filed grievance 1737-20 over Defendant SNYDER's refusal to provide him with a haircut that was permitted within his religious beliefs.

31.     The hearing for grievance 1737-20 was scheduled for November 13, 2020.

32.     The hearing for grievance 1737-20 as well as the hearings for the other six (6) grievances Plaintiff would file over Defendants interfering with the practice of his religion were held with Plaintiff in absentia because on or about November 2, 2020, Defendant DOE 1 placed Plaintiff in SHU / Long Term Keep.

33.     Additionally, Defendants DOE 1 and WHITE issued a restraint order for Plaintiff for November 4 to November 6, 2020. The restraint order was then extended until November 13, 2020 by the Superintendent.

34.     The justification for placing Plaintiff in SHU / Long Term Keep was that Plaintiff received a Tier III ticket for engaging in negative correspondence. On or about November 13, 2020, a hearing was held on the Tier III ticket issued on or about November 2, 2020, and the Tier III ticket was dismissed.

35.     Plaintiff was not returned to general population and the restraint order was not lifted. Plaintiff remained in SHU until on or about December 20, 2020.

36.     On or about November 16, 2020, Plaintiff wrote a letter to DEFENDANT WHITE and O.S.I. complaining that he was still being restrained even though the renewed restraint order expired on November 13, 2020.

37.     While in general population, Plaintiff was harassed for his religious belief by Defendant SNYDER and KLEPP. In SHU / Long Term Keep, Defendant KLEPP and DOE 2 harassment of Plaintiff and interference with his religious beliefs escalated making it near impossible for Plaintiff to practice his religion.

38.     On or about November 3, 2020, Plaintiff filed grievance 1815-20 against Defendants DOE 1 through 9 for failure to provide cooked hot Kosher meals on at least twenty occasions.

39.     On or about November 13, 2020, Plaintiff filed grievance 1872-20 against Defendant SNYDER and DOE 1 through 9 for harassment and for denying him the right to shower as part of his religious ritual for the sabbath.

40.     On or about November 19, 2020, Plaintiff filed grievance 1892-20 because he was still not receiving his Kosher meals.

41.     On or about November 20, 2020, Defendant filed grievance 1906-20 over Defendants DOE 1 through 9 intentionally destroying his religious texts. Upon information and belief, Defendants DOE 3 through 4 damaged and destroyed Plaintiff's religious books including his personal copy of the Torah by urinating on them.

42.     On or about December 15, 2020, Plaintiff filed grievance 2047-20 because he was still not receiving heated Kosher meals with all food items and was being continually harassed by Defendant KLEPP for practicing his religion.

43.     Throughout November and December 2020, Defendant KLEPP served as a regular officer in the Long Term Keep Lock where Plaintiff was being held. Defendant KLEPP interfered with and prevented Plaintiff from practicing his religious beliefs by denying Plaintiff the right to attend religious services and special holiday events, disturbing Plaintiff while he was in prayer, and denying Plaintiff the right to shower or receive hot water to clean himself for the Sabbath.

44.     On or about March 16, 2021, Plaintiff filed grievance 0481-21 over continued harassment and interference with his religious practice by Defendant KLEPP, SNYDER, and DOE 1 through 9, including being denied his prayer materials.

45.     Because Plaintiff was being held in the SHU / Long Term Keep, the hearings over all six (6) grievances, 1737-20, 1815-20, 1872-20, 1892-20, 1906-20, and 2047-20, addressing

Defendants' harassment and interference with Plaintiff's religious beliefs were held in absentia of Plaintiff. The IGRC denied all six (6) grievances.

46.     Of note, as a basis for denial of the grievances over Kosher Meals, the IGRC wrote that "[a]ll foods and/or Kosher trays are cooked to the appropriate temperatures in accordance with the NYS health department codes…[o]nce food leaves the mess hall they have no control over it."

47.     Upon information and belief, the IGRC never reviewed the audio and video recordings as part of their alleged investigation into Defendants SNYDER, KLEPP, and DOE 1 through 9 even though the recordings would substantiate Plaintiff's grievances.

48.     Plaintiff appealed all seven (7) grievances, 1737-20, 1815-20, 1872-20, 1892-20, 1906-20, 2047-20, and 0481-20.

49.     The Superintendent denied all seven (7) grievances, 1737-20, 1815-20, 1872-20, 1892-20, 1906-20, 2047-20, and 0481-20.

50.     Plaintiff appealed grievances 1815-20, 1872-20, 1892-20, 1906-20, 2047-20, and 0481-20 to the Central Office Review Committee ("CORC").

51.     On or about March 25, 2021, the CORC denied Plaintiff's grievance 1906-20 regarding Defendants DOE 3 and 4's destruction of Plaintiff's religious books.

52.     On or about March 25, 2021, the CORC denied Plaintiff's grievance 2047-20 regarding Defendant KLEPP's unprofessional behavior.

53.     On or about April 8, 2021, the CORC denied Plaintiff's grievance 1892-20 regarding Plaintiff's Kosher meals.

54.     On or about April 15, 2021, the CORC denied Plaintiff's grievance 1815-20 regarding Plaintiff's Kosher meals.

55.     On or about June 24, 2021, the CORC denied Plaintiff's grievance 0481-21 regarding the ongoing harassment and interference of Plaintiff practicing his religion. The CORC stated that the issue was moot because the Plaintiff had been transferred out of Attica.

56.     Plaintiff exhausted his administrative remedy in accordance with the Prison Litigation Reform Act (PLRA). 42 U.S.C. §1997e(a).

**Inadequate Medical Care**

57.     Plaintiff is over six feet six inches tall and has severe nerve damage to his neck, back, right arm and right hand.

58.     Due to his height, Plaintiff requires an extra-long bed frame and hospital style mattress so that his head and feet do not hang off his bed and exacerbate his nerve damage.

59.     Plaintiff has requested and received an extra-long bed frame and hospital style mattress at all prisons he has been incarcerated at except for Attica.

60.     On or about January 14, 2020, while incarcerated at Sing Sing Correctional Facility, Plaintiff requested and received an extra-long bed frame and medical mattress.

61.     On or about March 30, 2020, while incarcerated at Auburn Correctional Facility, Plaintiff requested and received an extra-long bed frame and medical mattress.

62.     Most recently, in or about July 2024, while incarcerated at Sing Sing Correctional Facility, Plaintiff requested and received an extra-long bed frame and hospital style mattress.

63.     While incarcerated at Attica Correctional Facility, Plaintiff made multiple requests for an extra-long bed frame and medical mattress. During the over eight months Plaintiff was incarcerated at Attica Correctional Facility, he never received the extra-long bed frame and medical mattress.

64.     Defendants WHITE, CLINTON and WILLIAMS, who had the power to approve

or deny any reasonable accommodations at Attica Correctional Facility, denied Plaintiff an extra-long bed and mattress despite his numerous requests for those accommodations.

65.     Additionally, during his incarceration at Attica Correctional Facility between October 2020 and May 2021, Plaintiff did not receive his prescribed physical therapy to treat his nerve damage.

66.     Plaintiff suffers from cancerous tumors. During his incarceration at Attica in 2020-2021, Plaintiff did not receive treatment for his tumors. Plaintiff was denied treatment and surgery for tumors.

67.     Defendants WHITE, CLINTON and WILLIAMS refusal to provide Plaintiff with necessary medical care and an extra-long bed frame with hospital mattress resulted in Plaintiff being in constant pain and agony.

68.     On or about November 2, 2020, Plaintiff requested an extra-long bed frame with hospital mattress. Defendant WILLIAMS informed Plaintiff this accommodation was "in the works."

69.     Later that day, on or about November 2, 2020, Defendant DOE 1 placed Plaintiff in SHU / Long Term Keep.

70.     On or about November 10, 2020, Defendant CLINTON denied Plaintiff's request for an extra-long bed frame and hospital mattress claiming he did not have verification from medical despite Plaintiff receiving the necessary bed at all prior and subsequent correctional facilities and providing such information to Defendant WILLIAMS.

71.     On or about November 13, 2020, Plaintiff filed grievance 1864-20 for denial of necessary medical care.

72.     On or about March 25, 2021, CORC denied Plaintiff's grievance 1864-20 for

denial of necessary medical care. CORC relied on Defendant SNYDER's claim that he had no recollection of Plaintiff making any requests for medical care as evidence that Plaintiff was not denied care despite the CORC confirming that Plaintiff required medical attention on November 9, 12, and 15, 2020.

73.     The uncomfortable sleeping conditions interfered with Plaintiff's sleep. Plaintiff was in constant pain and agony and found it difficult to attend mandatory programs like eating meals outside his cell.

74.     On or about December 2020, Plaintiff again requested an extra-long bed frame and hospital style mattress.

75.     Plaintiff also requested, in the alternative, that he be granted access to extra mattresses that were in the cell next to Plaintiff.   Plaintiff made this request based upon his belief that the extra mattresses could partially alleviate his discomfort, in absence of the requested accommodation.

76.     On or about December 14, 2020, Plaintiff filed grievance 2038-20 for denial of an extra-long bed frame and hospital style mattress and for Defendant KLEPP denying him access to extra mattresses that were in the cell next to Plaintiff.

77.     On or about December 15, 2020, the Superintendent placed Plaintiff on a "master list" to receive the requested mattress "when one becomes available."

78.     On or about December 16, 2020, Plaintiff appealed grievance 2038-20 asserting such extra mattresses were in the cell next to his and that Defendant KLEPP refused to allow Plaintiff to grab the available mattress.

79.     On December 30, 2020, Defendant CLINTON again denied Plaintiff the medically necessary extra-long bed frame and mattress. CLINTON claimed that Plaintiff had not

filed a grievance despite the grievance filed on December 14, 2020 and despite the Superintendent's decision to provide Plaintiff with the medically necessary bed frame and mattress when one became available.

80.    Still not having received his medically necessary bed frame and mattress, on or about January 5, 2021, Plaintiff filed grievance 0027-21.

81.    On January 21, 2021, Defendant CLINTON again refused to provide Plaintiff with his medically necessary bed frame and mattress stating a lack of medical documentation.

82.    Plaintiff had repeatedly attempted to obtain the additional medical documentation as Defendants WHITE, CLINTON and WILLIAMS seemed to claim his prior records were insufficient. On or about December 21, 2020, January 3, 2021, January 31, 2021, February 9, 2021 and February 21, 2021, Plaintiff sent letters to Defendant WILLIAMS begging for necessary medical testing and care for his nerve damage and tumors.

83.    In response, Defendant WILLIAMS admitted that Plaintiff was supposed to receive physical therapy for his back and neck pain but repeatedly denied Plaintiff access to the necessary medical providers due to the "COVID travel restrictions."

84.    Plaintiff also filed grievance 2135-20 on or about December 29, 2020 and grievance 0186-21 on or about January 29, 2021, over WHITE, CLINTON and WILLIAMS' refusal to provide Plaintiff with necessary medical care.

85.    Both grievances 2135-20 and 0186-21 were denied at all steps citing the COVID-19 restrictions prevented Plaintiff from being treated.

86.    Finally, on or about March 5, 2021, Dr. Gary Wong confirmed the nerve damage with electromyography testing.

87.    Nevertheless, on or about March 25, 2021, CORC denied Plaintiff's grievance

2038-20 claiming Plaintiff was on a waitlist.

88.     On April 15, 2021, CORC denied Plaintiff's grievance 0027-21 in its entirety and removed Plaintiff from the "alleged" waitlist. The CORC stated that Plaintiff did not have a diagnosis of nerve damage ignoring Dr. Wong's March 5, 2021 findings. CORC's determination barred Plaintiff from any path to receiving an extra-long bed frame and hospital mattress.

89.     Plaintiff never received an extra-long bed frame and hospital style mattress during his incarceration at Attica.

90.     As a result of Defendants WHITE, CLINTON and WILLIAMS refusal to provide Plaintiff with necessary medical care and an extra-long bed frame with hospital mattress, Plaintiff was in constant pain and agony.

91.     As a result of Defendants WHITE, CLINTON and WILLIAMS refusal to provide Plaintiff with necessary medical care and an extra-long bed frame with hospital mattress, Plaintiff was unable to attend mandatory programs, religious services, and special holiday events because the pain and agony caused by having to sleep on a standard bed exacerbated his nerve damage leaving him in agony and impairing his ability to walk.

92.     Plaintiff exhausted his administrative remedy in accordance with the Prison Litigation Reform Act (PLRA). 42 U.S.C. §1997e(a).

**Conditions of Confinement**

93.     On or about January 23, 2021, Plaintiff was splashed with urine by another prisoner while in his general population cell.

94.     Defendants WHITE, BURNS, EMKE, and SNYDER, placed Plaintiff in SHU Cell #17 on BW with an initial shield order for seven days, January 23 to January 29, 2021.

95.     A shield is a large piece of plexiglass that is screwed on to the cell. It is airtight

with only five holes at the bottom to allow for air flow. The prisoner cannot hear or communicate with others and is completely isolated. There is a mechanical slot through which the inmate receives his meals. The inmate is cut off from receiving hot water for bathing.

96.     The SHU cell Plaintiff was placed in was covered in bodily fluids, mold, cockroaches and other bugs. It was freezing cold with no heat in the dead of winter. Because of the shield, no heat was able to flow into the cell.

97.     Additionally, as detailed above, during his time in the SHU, Defendants WHITE, WILLIAMS, CLINTON, BURNS, EMKE, KLEPP and SNYDER refused to provide Plaintiff with necessary medical care and adequate food.

98.     As a result of the poor conditions, Plaintiff became deathly sick.

99.     The poor conditions exacerbated Plaintiff's mental health including his PTSD, anxiety, OCD and depression.

100.    Plaintiff and other prisoners brought the unsanitary conditions to the attention of Defendants WHITE, BURNS, WILLIAMS, EMKE, SNYDER, COUCH, KLEPP, DUFFY, MINCH and DOE 1 through 9.

101.    Defendants took no steps to rectify the severe and prolonged conditions of Plaintiff's confinement.

102.    Rather, on or about February 18, 2021, Defendant COUCH falsely accused Plaintiff of saying that he loved her and wrote a fabricated Tier III Ticket resulting in Plaintiff's stay in the SHU being extended an additional 30 days and shield order being renewed.

103.    During the hearing on the ticket, Defendants DUFFY and MINCH provided false evidence in an attempt to corroborate Defendant COUCH's fabricated Tier III Ticket.

104.    Plaintiff requested the audio and video camera footage be reviewed. Upon review,

the footage proved that Defendant COUCH had falsified the ticket and that Defendants DUFFY and MINCH had lied. The ticket was dismissed.

105.     Defendants COUCH, DUFFY, and MINCH's misconduct directly caused Plaintiff's continued confinement in the SHU.

106.     Upon information and belief, while Plaintiff did not instigate or retaliate against the individual who threw urine on him, Plaintiff's time in the SHU and with a shield was significantly longer than the other inmate.

**Retaliation**

107.     During Plaintiff's time at Attica Correctional Facility, he filed approximately thirty grievances, appealed the corrective actions taken against him by Defendants, and wrote numerous letters to O.S.I., Central New York Psychiatric Center, and NYS Commissioner of Corrections.

108.     Each time a hearing was held on Plaintiff's grievances, Plaintiff was placed in the SHU / Long Term Lock Keep prior to the hearing date causing all his grievance hearings to be held in absentia.

109.     On or about October 21, 2020, Plaintiff filed his first grievance at Attica Correctional Facility, grievance 1737-20, over Defendant SNYDER's refusal to provide him with a haircut that was permitted within his religious beliefs.

110.     The hearing for grievance 1737-20 as well as the hearings for another six (6) grievances Plaintiff filed over Defendants interference with his practicing of his religion were held with Plaintiff in absentia because on or about November 2, 2020 Defendant DOE 1 placed Plaintiff in SHU / Long Term Keep.

111.     Plaintiff was returned to general population on or about December 20, 2020.

112.    On or about December 29, 2020, Plaintiff began filing grievances over the lack of medical care and not receiving his medically necessary bed.

113.    Similarly to the Fall, the first hearing date was scheduled for January 27, 2021, but it and all subsequent grievances filed by Plaintiff were heard in absentia because on or about January 23, 2021, Plaintiff was sent back to the SHU where he would remain for the majority of his remaining time at the Attica Correctional Facility.

114.    On or about January 23, 2021, Plaintiff was splashed with urine by another prisoner while in his general population cell.

115.    Defendants WHITE, BURNS, EMKE, and SNYDER, placed Plaintiff in the SHU with an initial shield order for seven days, January 23 to January 29, 2021.

116.    On or about February 2, 2021, Plaintiff filed grievance 0213-21 over the shield being in place without renewal orders.

117.    On or about February 9, 2021, Plaintiff filed grievance 0264-21 over the shield being in place without renewal orders.

118.    On or about February 14, 2021, Plaintiff raised concerns with Defendant COUCH that Couch had misclassified his mental health level and that Plaintiff's records indicated his mental illness was more severe than it actually is.

119.    Defendant COUCH became very defensive and disrespectful and walked away from Plaintiff.

120.    Plaintiff reported Defendant COUCH to Central New York Psychiatric Center ("CNYPC").

121.    On or about February 18, 2021, Defendant COUCH confronted Plaintiff with a copy of the complaint he had submitted to CNYPC.

122.    Upset that Plaintiff had reported her to the CNYPC, Defendant COUCH then falsely accused Plaintiff of saying that he loved her and wrote a fabricated Tier III Ticket.

123.    As a result of Defendant COUCH's false accusation, Plaintiff's stay in the Special Housing Unit was extended an additional 30 days.

124.    Additionally, Plaintiff's shield order was renewed on or about February 19, 2021, for another seven days until February 26, 2021, for alleged incidents from a month ago - the incident on January 23, 2021, and because Plaintiff allegedly threatened to spit on staff on January 25, 2021. Plaintiff denies ever making such a threat.

125.    Plaintiff grieved his Tier III discipline ticket.

126.    On or about February 24, 2021, Defendant MINCH made fun of Plaintiff's appearance in the shower and repeatedly called Plaintiff "rat snitch" and "Master Splinter."

127.    On or about February 24, 2021, Defendant MINCH told Plaintiff that he dehumanizes him and calls him "Master Splinter" rat snitch because he was aware of the grievances Plaintiff had filed against him.

128.    Defendant MINCH made these statements in front of other inmates placing Plaintiff at severe risk of harm and retaliation from inmates who now believed he was a snitch.

129.    Defendant SNYDER and DOE 5 through 9 heard Defendant MINCH harassing and threatening Plaintiff but did not intervene.

130.    In or about February 2021, Defendant MINCH also attempted to bribe another prisoner to stab the Plaintiff to death.

131.    Despite Minch's threats, Plaintiff pursued his grievance over the Tier III ticket and extended stay in SHU.

132.    During the hearing on the Tier III ticket, Defendants DUFFY and MINCH, falsely

testified that they heard the Plaintiff tell Defendant COUCH that he loved her.

133. Plaintiff requested the audio and video camera footage be reviewed. Upon review, the footage proved that Defendant COUCH had falsified the ticket and that Defendants DUFFY and MINCH had lied. The ticket was dismissed.

134. Defendants COUCH, DUFFY, and MINCH's misconduct directly caused Plaintiff's continued confinement in the SHU.

135. Plaintiff filed grievances 0213-21, February 2, 2021; 0257-21, February 8, 2021; 0264-21, February 9, 2021 over Defendants WHITE, WILLIAMS, BURNS, EMKE, SNYDER, COUCH, DUFFY, and MINCH renewing of the shield without cause and retaliation against him.

136. Plaintiff's grievances 0213-21, 0257-21, 0264-21were all appealed to the CORC and denied.

137. Plaintiff exhausted his administrative remedy in accordance with the Prison Litigation Reform Act (PLRA). 42 U.S.C. §1997e(a).

## AS AND FOR THE FIRST CAUSE OF ACTION
### 42 U.S.C. §1983 Violation of Plaintiff's First Amendment Right to Freedom of Religion

138. Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

139. Plaintiff is a devout and practicing member of the Jewish religion, a protected class.

140. Defendants KLEPP, SNYDER, and DOE 1 through 9 prevented Plaintiff from practicing his faith by preventing him from attending religious services, denying him edible Kosher meals, denying him the hot water or showers as part of his prayer ritual for the Sabbath, denying him a haircut that comports with his faith, banging on his cell while Plaintiff was praying, and destroying his religious books.

141.     Because Plaintiff could not attend religious service, pray without harassment, or have his religious books, Plaintiff could not practice his religious beliefs free from burden.

142.     Defendants KLEPP, SNYDER, and DOE 1 through 9 actions were in direct response to Plaintiff's request to practice his religion.

143.     The Defendants' above-described deprivation of the Plaintiff of his right to practice his religion was a violation of his constitutionally guaranteed right to be free of any prohibition on the free exercise of his religion, as provided in the First Amendment of the United States Constitution, as made applicable to the State by operation of the Fourteenth Amendment.

### AS AND FOR THE SECOND CAUSE OF ACTION
### 42 U.S.C. §1983 Violation of Plaintiff's Eighth Amendment

144.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

145.     Defendants had a duty under the Eighth and Fourteenth Amendments of the Constitution of the United States to provide for the safety and well-being of the Plaintiff.

146.     As set forth above, Defendants NEW YORK STATE, WHITE, WILLIAMS, and CLINTON, acted with deliberate indifference to Plaintiff's medical needs in violation of Plaintiff's right to be free from cruel and unusual punishment under the Constitution of the United States.

147.     Defendants NEW YORK STATE, WHITE, WILLIAMS, and CLINTON acted with recklessness and deliberate indifference because they knew Plaintiff's need for an extra-long frame and medical mattress and medical treatment, but intentionally refused to provide it even after repeatedly receiving medical documentation; prevented Plaintiff from a medically necessary extra-long bed frame and medical mattress and other medical treatment; failed to take Plaintiff's complaints seriously; demanded Plaintiff provide updated medical documentation but

then failed and refused to send Plaintiff for adequate medical care and diagnostic testing.

148.   Defendants NEW YORK STATE, WHITE, WILLIAMS, and CLINTON acted

with recklessness and deliberate indifference when they ignored and failed to treat Plaintiff's

pain, causing it to worsen and leaving Plaintiff with limited mobility.

149.   Plaintiff made known to the Defendants NEW YORK STATE, WHITE,

WILLIAMS, and CLINTON his very serious and obvious medical problems.

150.   As a direct and proximate result of the foregoing, Plaintiff was damaged and

injured.

### AS AND FOR THE THIRD CAUSE OF ACTION
### 42 U.S.C. §1983 Violation of Plaintiff's Eighth Amendment

151.   Plaintiff realleges and incorporates by reference each and every allegation above

as if fully set forth herein.

152.   Defendants had a duty under the Eighth and Fourteenth Amendments of the

Constitution of the United States to provide for the safety and well-being of the Plaintiff.

153.   As set forth above, Defendants NEW YORK STATE, WHITE, WILLIAMS,

BURNS, EMKE, SNYDER, COUCH, DUFFY, MINCH and KLEPP acted with deliberate

indifference to Plaintiff's health and safety in violation of Plaintiff's right to be free from cruel

and unusual punishment under the Constitution of the United States.

154.   Defendants NEW YORK STATE, WHITE, BURNS, EMKE, SNYDER took

actions to put Plaintiff in the SHU.

155.   Defendants WHITE, WILLIAMS, CLINTON, SNYDER and KLEPP denied

Plaintiff adequate food and/or medical care with deliberate indifference to Plaintiff's health and

safety.

156.   Defendants NEW YORK STATE, WHITE, WILLIAMS, BURNS, EMKE,

SNYDER, and KLEPP were aware of the serious state of the SHU cell and that Plaintiff was not receiving adequate food, shelter, and medical care and were deliberate indifferent to Plaintiff's health and safety.

157. Defendants COUCH, DUFFY and MINCH fabricated a Tier III ticket and provided false evidence to extend Plaintiff's stay in the SHU.

158. Defendants COUCH, DUFFY and MINCH actions were done with a culpable state of mind and with deliberate indifference to Plaintiff's health and safety.

159. Defendants NEW YORK STATE, WHITE, BURNS, EMKE, SNYDER, COUCH, DUFFY and MINCH extended Plaintiff's shield at least four times without new cause.

160. Plaintiff repeatedly notified Defendants NEW YORK STATE, WHITE, WILLIAMS, BURNS, EMKE, SNYDER, COUCH, DUFFY, MINCH and KLEPP that the shield exacerbated Plaintiff's inhumane conditions and caused Plaintiff additional mental and physical harm.

161. Defendants NEW YORK STATE, WHITE, WILLIAMS, BURNS, EMKE, SNYDER, and KLEPP acted with recklessness and deliberate indifference when they placed Plaintiff in a freezing cell in the dead of winter that was covered in cockroaches, mold and bodily fluids and failed to provide him with adequate edible food.

162. Defendants COUCH, DUFFY, and MINCH acted with recklessness and malice when they falsified a Tier III ticket and testimony against Plaintiff and contributed to his stay in the SHU being extended.

163. Plaintiff made known to the Defendants NEW YORK STATE, WHITE, WILLIAMS, BURNS, EMKE, SNYDER, COUCH, DUFFY, MINCH and KLEPP that his conditions were severe, that he was not receiving enough food, and that the conditions were

exacerbating his medical conditions.

164.    As a direct and proximate result of the foregoing, Plaintiff was damaged and injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### 42 U.S.C. §1983 Retaliation for Plaintiff's Assertion of Constitutional Rights

165.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

166.    Plaintiff asserted his rights under the First and Eight Amendments of the United States Constitution.

167.    Plaintiff's rights were denied and he filed grievances asserting his writes and naming Defendants WHITE, WILLIAMS, CLINTON, BURNS, EMKE, SNYDER, COUCH, DUFFY, MINCH, KLEPP, DOE 1 through 9.

168.    In response to Plaintiff engaging in constitutionally protected speech and conduct, Defendants WHITE, CLINTON, BURNS, EMKE, SNYDER, COUCH, DUFFY, and MINCH retaliated against Plaintiff by placing him in SHU, placing him in restraints, placing and renewing without cause a shield order, fabricating a Tier III ticket and falsifying testimony to extend Plaintiff's confinement in SHU, and threatening Plaintiff with serious bodily harm including death.

169.     There is a clear causal connection between the protected activity and the adverse action.

170.    As a direct and proximate result of the foregoing, Plaintiff was damaged and injured.

## DEMAND FOR RELIEF

By reason of Defendant's above actions, Plaintiff has been damaged and injured and defendant is thereby liable to Plaintiff.

**WHEREFORE**, plaintiff respectfully requests the following relief:

a. A judgment in favor of Plaintiff, for each and every cause of action against the Defendants; for proper, timely and adequate medical treatment and surgery; for a reasonable accommodation for an extra-long bed frame and medical mattress; and for a reasonable accommodation to practice his religion with harassment, retaliation or burden;

b. That the Court award Plaintiff compensatory and punitive damages in the amount of $2,000,000.00;

c. That the Court issue an order awarding Plaintiff reasonable attorneys' fees together with the costs and disbursements of this action;

d. That this Court award Plaintiff such other and further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    October 4, 2024
          Buffalo, New York

                    Attorneys for Plaintiff


          By:    _____
                    Claire T. Sellers, Pro Bono Counsel
                    135 Delaware Ave., Suite 502
                    Buffalo, NY 14202
                    csellers@hayesdolce.com
                    (716) 534-8388

                    Carolyn G. Nussbaum, Pro Bono Counsel
                    1300 Clinton Square
                    Rochester, NY 14604
                    CNussbaum@nixonpeabody.com
                    (585) 263-1558